COATES v ATTORNEY GENERAL

Docket No. 57191. Submitted April 19, 1982, at Lansing.—Decided November 2, 1982. Leave to appeal applied for.

James M. Coates, Jr., submitted proposed articles of incorporation of Fireman's Fund Insurance Company of Michigan (hereinafter Fireman's) to the Insurance Commissioner for review by the commissioner and the Attorney General. Fireman's seeks to operate as a Michigan subsidiary of the American Insurance Group. Applications for incorporation of proposed domestic insurance companies are submitted to the Attorney General, who is to advise the Insurance Commissioner whether the proposed articles of incorporation are in compliance with the Insurance Code. The Insurance Commissioner may then make whatever investigation is deemed necessary and determine whether or not to issue a certificate authorizing the incorporators to proceed with organization of the company. While Coates's application was pending the Attorney General issued an opinion holding that the Insurance Commissioner may refuse to accept the articles of incorporation of a proposed domestic insurance company where the purpose of incorporation in Michigan is to avoid the tax on premiums imposed on foreign insurers. Then, the Attorney General informed the Insurance Commissioner that he would not approve Fireman's proposed articles of incorporation for the reasons expressed in that opinion. Coates then filed an original action for mandamus, in the Court of Appeals, seeking to compel the Attorney General to certify that the articles comply with the Insurance Code and the Insurance Commissioner to authorize the incorporators to proceed with organization. *Held:*

1. Mandamus is an appropriate remedy as to the Attorney General, as plaintiff alleges that the Attorney General, by not certifying the articles of incorporation to the Insurance Com-

REFERENCES FOR POINTS IN HEADNOTES

[1] 52 Am Jur 2d, Mandamus §§ 12, 20.
[2] 52 Am Jur 2d, Mandamus § 46.
[3] 52 Am Jur 2d, Mandamus § 72.
[4] 43 Am Jur 2d, Insurance § 22.
[5] 43 Am Jur 2d, Insurance § 43.

missioner, has breached a clear legal duty to do so. Mandamus does not lie against the commissioner at this time, however, because the commissioner will not be under a clear legal duty to act on the application unless and until the Attorney General certifies the articles.

2. The power of the Attorney General is limited to a determination of whether the proposed articles are in compliance with the Insurance code. It is not within his power to disapprove the articles for reasons other than a failure to comply with the code. The determination of whether an insurance company seeks to form a domestic corporation merely to receive preferential treatment is one for the Insurance Commissioner. The Attorney General should have certified the articles.

Mandamus is granted against the Attorney General.

M. J. KELLY, P.J., concurred. He would point out that the Insurance Code makes no provision for the Insurance Commissioner to withhold certification based on the diminution of tax revenue. Refusal may be based only upon a finding of fraud upon subscribers to the capital stock or the members of the corporation.

1. MANDAMUS — OFFICERS — STATE OFFICERS — JURISDICTION.

   An action for mandamus against a state officer may properly be brought in either the Court of Appeals or the circuit court, at the option of the party bringing the action (MCL 600.4401; MSA 27A.4401; GCR 1963, 714.1[1]).

2. MANDAMUS — ALTERNATIVE REMEDIES.

   Mandamus is inappropriate where there is another adequate remedy in law or equity.

3. MANDAMUS — CLEAR LEGAL DUTY.

   Mandamus ordinarily will not be granted unless the defendant is under a clear legal duty to act.

4. INSURANCE — CORPORATIONS — ATTORNEY GENERAL — INSURANCE COMMISSIONER.

   The Attorney General is required to certify to the Insurance Commissioner the proposed articles of incorporation of a domestic insurance company if the articles are found by the Attorney General to comply with the Insurance Code; the Attorney General does not, however, have the power to make a determination that the proposed incorporation is merely for the purpose of receiving preferential treatment over that accorded foreign insurers, rather, that determination is to be made by the Insurance Commissioner, who is empowered to make what-

ever investigation is deemed necessary concerning incorporation of a domestic insurance company (MCL 500.5020[1], 500.5024[2]; MSA 24.15020[1], 24.15024[2]).

Concurrence by M. J. Kelly, P.J.

5. Insurance — Corporations — Insurance Commissioner.

*The Insurance Commissioner is empowered to refuse to license incorporators to organize an insurance company only to prevent fraud upon either the persons subscribing to the capital stock or the members of the corporation; in the absence of fraud, the commissioner must issue a certificate authorizing the incorporators to proceed with their organization efforts; the Insurance Code makes no provision for the commissioner to withhold certification based on the diminution of tax revenues to the state resulting from incorporation as a domestic, rather than a foreign, insurance company (MCL 500.5024; MSA 24.15024).*

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Donald S. Young* and *M. Teresa D'Arms*), for plaintiff.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Harry G. Iwasko, Jr., Wallace T. Hart*, and *William A. Chenoweth*, Assistants Attorney General, for defendants.

Before: M. J. Kelly, P.J., and Cynar and G. R. Cook,* JJ.

Cynar, J. Plaintiff brought this original action for mandamus to compel the Attorney General to certify to the Insurance Commissioner that the articles of incorporation submitted by plaintiff are in compliance with the Insurance Code. Plaintiff also asks the Court to compel the Insurance Commissioner to issue a certificate authorizing the incorporators to proceed with the organization of Fireman's Fund Insurance Company of Michigan.

* Circuit judge, sitting on the Court of Appeals by assignment.

The agreed-upon facts can be determined from an examination of the briefs of both parties. On April 9, 1980, plaintiff filed with defendant Insurance Commissioner the articles of incorporation of a proposed insurance company to be called Fireman's Fund Insurance Company of Michigan (hereinafter Fireman's), together with the bylaws, the plan of organization and operations, a statement by each incorporator and the stock subscription agreement. The incorporators paid the required fees for the cost of examination, investigation and processing of the application by the commissioner. Plaintiff then submitted additional information. At that point, the application was allegedly in order for review by the Attorney General and Insurance Commissioner.

Fireman's intended to offer insurance against all hazards and risks, except life, title and mortgage insurance. Fireman's would be a subsidiary of the American Insurance Company and belong to the Fireman's Fund Insurance Group, a group of 16 insurance companies owned by the American Express Corporation. Fireman's would locate its home office and principal place of business in Southfield, where an associated company had previously located its branch office. Plaintiff then expected Fireman's to consolidate and take over the transferable insurance business of other Fireman's Fund companies which have written insurance in Michigan.

On August 22, 1980, the Attorney General issued an opinion holding that the Insurance Commissioner may refuse to accept the articles of incorporation of a proposed domestic insurance company where the purpose of incorporation in Michigan is to avoid the premiums tax imposed upon foreign insurers. A copy of this opinion was

sent to plaintiff's attorney. On December 12, 1980, the Insurance Bureau wrote that it was unable to complete its review of plaintiff's application because the Attorney General had not advised the commissioner of his approval of the articles of incorporation. Plaintiff requested the Attorney General to issue a determination of approval or disapproval without delay. The Attorney General then informed the Insurance Commissioner that he would not approve Fireman's proposed articles for the reasons expressed in the earlier opinion.

Plaintiff filed a complaint for a writ of mandamus on April 13, 1981. This Court issued an order to show cause on July 22, 1981.

As both parties make clear in their briefs, at stake is the premiums tax liability of a foreign insurer which incorporates a domestic subsidiary through which all of its business in the state is done. Foreign companies doing insurance business in Michigan pay a substantial tax on premiums on all insurance written in Michigan.

I

Plaintiff argues that mandamus is the only remedy available and that plaintiff has been forced to seek a writ of mandamus by defendant's refusal to follow proper statutory procedures.

This Court has mandamus jurisdiction over state officials under GCR 1963, 714.1(1). An action against a state officer is proper in the Court of Appeals or the circuit court at the option of the party commencing the action. MCL 600.4401; MSA 27A.4401; *Schweitzer v Board of Forensic Polygraph Examiners,* 77 Mich App 749, 753, fn 5; 259 NW2d 362 (1977), *lv den* 402 Mich 837 (1977). When there is a plain, direct and adequate alter-

native remedy, courts will not permit the use of a writ of mandamus. *Coffin v Detroit Bd of Ed,* 114 Mich 342; 72 NW 156 (1897). Mandamus is inappropriate where there is another adequate remedy in law or in equity. *Clarke v Hill,* 132 Mich 434; 93 NW 1044 (1903). See, also, *Oakland County Bd of Road Comm'rs v State Highway Comm,* 79 Mich App 505; 261 NW2d 329 (1977), *lv den* 402 Mich 907 (1978), and the cases cited therein.

As to the Attorney General, plaintiff indicates that the clear legal duty to be performed is contained in MCL 500.5020; MSA 24.15020, which states in part:

"(1) Before such articles of incorporation shall be effective for any purpose the same shall be submitted to the attorney general for his examination, and if found by him to be in compliance with this code he shall so certify to the commissioner."

If plaintiff is correct in his claim that the articles of incorporation submitted for review are in compliance with the Insurance Code, he is entitled to a writ of mandamus. His entitlement to the writ of mandamus rests on the resolution of issue II. The writ does, however, appear to be an appropriate remedy.

As to the Insurance Commissioner, plaintiff points to MCL 500.5024; MSA 24.15024, as containing the clear legal duty which he seeks to compel the commissioner to perform. Subsection 1 requires persons seeking incorporation of an insurance company to prepare and file in the commissioner's office, with the certificate of the Attorney General certifying the articles of incorporation annexed thereto, a statement showing in full detail the plan according to which the company

proposes to transact business and a copy of a prospectus and the proposed advertisements to be used to sell stock. The filing is required to contain several other items of information. Subsection 2 requires the commissioner to examine the statements and documents presented to him and states that he shall have the power to conduct any investigation which he may deem necessary and to hear the incorporators and to examine under oath any persons interested in or connected with the proposed insurance company. If, in the commissioner's opinion, the sale of capital stock in the proposed insurance company or soliciting of membership therein would work a fraud upon the persons subscribing to such capital stock or membership, the commissioner shall refuse to license the person to proceed in the organization and promotion of the insurance company. Further, MCL 500.5040; MSA 24.15040 requires the commissioner, upon the petition of the incorporators, to cause an examination to be made concerning the capital stock to determine if the requirements concerning the same have been fully complied with. Upon being satisfied that all requirements of the Insurance Code precedent to commencing business have been fully complied with, the commissioner shall deliver to the company a certificate of authority to commence business and issue policies.

It is clear that the duties of the commissioner which plaintiff seeks to compel her to perform may not be performed before the certification of the articles of incorporation by the Attorney General. No clear legal duty has yet devolved upon the commissioner which she has breached. Mandamus ordinarily will not issue unless the defendant is under a clear legal duty to act. *Hill v State Highway Comm,* 382 Mich 398, 402; 170 NW2d 18 (1969). The Insurance Commissioner will not be

under a clear legal duty to act unless and until the Attorney General certifies the articles of incorporation. Even then, the commissioner will not be under a duty to grant the relief sought by plaintiff until she has performed her statutory functions under MCL 500.5024; MSA 24.15024 and MCL 500.5040; MSA 24.15040. The facts presented do not show that the commissioner has failed to perform any legal duty owed to plaintiff, clear or otherwise.

We find that this action in mandamus is an appropriate means of seeking relief against the Attorney General. At the same time, no writ may issue against the commissioner because the facts presented do not show any legal duty on her part at this time.

Defendants also claim that plaintiff has another adequate remedy, *i.e.*, a declaratory judgment action in circuit court. We reject this claim for failure to support it with argument or authority. Plaintiff does not seek merely a declaration of rights but rather a mandate to state officers to perform their legal duties. Plaintiff clearly claims that he is entitled to immediate action on the part of defendants.

## II

Although we have determined that mandamus is an appropriate remedy against the Attorney General, it remains to be decided whether the facts of this case warrant the issuance of a writ. This depends on whether the Attorney General properly refused to certify the articles of incorporation. We believe he did not and that certification of the articles should have been granted. It appears that the discretionary determination that has been

made by the Attorney General is more properly within the province of the Insurance Commissioner.

Before further analysis takes place, some clarification of the role of the Attorney General's opinion should be made. Plaintiff submitted documents to the commissioner who submitted them for certification of the articles of incorporation by the Attorney General. The Attorney General issued an opinion stating that the Insurance Commissioner, not the Attorney General, could disapprove a filing as a domestic insurer if, after investigation, she found that the purpose for incorporation in Michigan was to avoid the premiums tax imposed upon foreign insurers. OAG 1979-1980, No 5758, p 930 (August 22, 1980). Later, the Attorney General wrote to the commissioner, with a copy to plaintiff, stating that he had disapproved the articles of incorporation for the reasons stated in his opinion. Of course, nothing in the opinion stated that he had such power.

In justifying his refusal to certify plaintiff's articles of incorporation, the Attorney General relies on MCL 500.5020(1); MSA 24.15020(1), which requires him to certify the articles "if found by him to be in compliance with this code". MCL 500.5008(2); MSA 24.15008(2) requires that the articles submitted contain:

"* * * Fourth, The purposes of the incorporation and the reference to the chapter of this code under which such purposes are enumerated and under which such company intends to operate * * *."

The Attorney General suggests that these provisions are the basis for the refusal to certify. Al-

though plaintiff stated the purposes of incorporation, the Attorney General found that such purposes were not in compliance with the Insurance Code.

Plaintiff, on the other hand, argues that the Attorney General's review of the articles of incorporation is a formal one, intended only to determine whether the application itself complies with the code. Plaintiff argues that, if the Attorney General finds the *stated* purpose to be an illegal one under the code, it reasonably follows that he may refuse to certify the articles for failure to be "in compliance with this code".

Very few cases have interpreted the sections concerning the rules for organization of domestic stock and mutual insurers. It appears here, however, that the Attorney General has attempted to usurp the powers of the Insurance Commissioner. MCL 500.5024(2); MSA 24.15024(2) specifically provides that the commissioner shall have the power to conduct any investigation deemed necessary concerning the incorporation of a domestic insurance company.

The Court recognizes the differing treatment accorded domestic and foreign companies by the Insurance Code which may indicate a legislative intent to preclude foreign insurers from establishing shell companies within the state to gain favorable treatment.

The code contains many distinctions between domestic and foreign insurers. Fees are different for domestic insurers and foreign insurers, MCL 500.240; MSA 24.1240. MCL 500.403; MSA 24.1403 requires only foreign insurers to obtain a certificate of authority concerning solvency. Special requirements for possession of assets for foreign insurers are set forth in MCL 500.404; MSA

24.1404. Special requirements concerning the corporate purposes of foreign insurers are set forth in MCL 500.406; MSA 24.1406. The applicable deposit requirements for domestic insurers differ from those for foreign insurers as set forth in MCL 500.411; MSA 24.1411. Foreign fire, fire and marine and marine and inland insurers must also file an agreement as to competition, which is not a requirement for domestic insurers, MCL 500.422; MSA 24.1422. Foreign insurers are required to file certain documents concerning their admission to do business in the state of their origin or incorporation, MCL 500.424; MSA 24.1424. The rules concerning names for the conduct of business differ, MCL 500.454; MSA 24.1454.

Of particular importance in determining the Legislature's intent is the differing tax treatment accorded domestic and foreign companies. MCL 500.440; MSA 24.1440 imposes a premiums tax of two percent or three percent, depending on the type of insurance, on all premiums on business written or renewed in the state. Domestic insurers are subject to the Michigan Single Business Tax Act, MCL 208.1 *et seq.;* MSA 7.558(1) *et seq.* The single business tax is similar to a value-added tax in that it taxes what one has added to the economy in contrast to an income tax which taxes what one has derived from the economy. *Stockler v Dep't of Treasury,* 75 Mich App 640, 643-644; 255 NW2d 718 (1977), *lv den* 402 Mich 802 (1977), *app dis* 435 US 963 (1978). Such a tax is more likely to impose a heavier burden on true domestic insurers than on instrumentalities of foreign insurers incorporated in Michigan because it taxes business activity as a whole.

Also indicative of a possible legislative intent to preclude the type of incorporation plaintiff seeks

to make is the presence of a retaliatory tax in MCL 500.476; MSA 24.1476. The retaliatory tax imposes a tax upon insurance companies of other states equal to that imposed on Michigan companies doing business in those states where the aggregate tax burden on Michigan companies doing business in those states exceeds the burden on companies of those states doing business in Michigan. Such a tax is rendered ineffectual if companies of those states may form domestic Michigan insurers which do business only in Michigan.

All of the differences in treatment, however, simply do not give authority to the Attorney General to refuse to certify the articles of incorporation. The Attorney General made his decision without granting any opportunity to the incorporators to be heard. Considerations of whether an insurance company seeks to form a sham domestic corporation merely for the purpose of receiving preferential treatment must be made by the Insurance Commissioner after providing some opportunity to the incorporators to be heard. Such serious allegations cannot be properly considered merely by a review of the articles of incorporation and a gut reaction that something suspicious is about to occur.

Upon reaching this conclusion, we determine that the writ of mandamus sought by plaintiff against the Attorney General should now issue. No writ will issue against the Insurance Commissioner because such issuance would be premature, the commissioner never having refused to do her duty. This Court anticipates that further proceedings will be conducted by the Insurance Commissioner as guided by this opinion and that of the Attorney General when, and if, plaintiff requests the Insurance Commissioner to pursue the application.

This Court cannot reach a decision on plaintiff's argument that the premiums tax on foreign insurers is unconstitutional. Any decision now would be premature.

A writ of mandamus is granted against the Attorney General.

G. R. Cook, J., concurred.

M. J. Kelly, P.J. *(concurring)*. I concur in the result reached by Judge Cynar. A writ of mandamus should issue against the Attorney General, directing him to certify to the Insurance Commissioner that plaintiff's articles of incorporation are in compliance with the Insurance Code. MCL 500.5020; MSA 24.15020 allows the Attorney General to refuse to certify the articles of incorporation only if the articles are not in compliance with the Insurance Code. The Attorney General is not empowered to withhold certification merely due to his belief that the motivating factor behind the formation of a newly proposed corporation is to avoid application of a particular tax. Nothing in the code gives the Attorney General such a power.

Before the Insurance Commissioner may issue a certificate authorizing plaintiff to proceed with the organization of the insurance company, she must receive certified articles of incorporation from the Attorney General. See MCL 500.5020; MSA 24.15020, MCL 500.5024; MSA 24.15024. Thus, mandamus may not properly issue against the commissioner as she is under no current duty to act.

Whether the commissioner may refuse to authorize plaintiff to proceed with the organization of the proposed insurance company based solely on a determination that plaintiff intends to avoid Mich-

igan's premiums tax is not an issue ripe for decision. The commissioner has made no such determination nor has she refused on this basis to authorize plaintiff to proceed with organization efforts. Nevertheless, it must be noted that under MCL 500.5024; MSA 24.15024, the commissioner is empowered to conduct an investigation and refuse to license incorporators to proceed with the organization of an insurance company only to prevent fraud upon either the persons subscribing to the capital stock or the members of the corporation. If fraud is not found, the commissioner is directed by the statute to issue a certificate authorizing the incorporators to proceed with their organization efforts. The Insurance Code makes no provision for the commissioner to withhold certification based on the diminution of tax revenues to the state. The opinion of the Attorney General, OAG 1979-1980, No 5758, p 930 (August 22, 1980), fails to address this statutory limitation on the power of the commissioner to prevent the formation of a domestic insurance corporation.

The premiums tax on foreign insurance corporations is paid to the commissioner for deposit with the treasurer of the State of Michigan. MCL 500.440; MSA 24.1440. All relevant data necessary to computation of the tax, including any information the commissioner may prescribe, must be filed with the commissioner. MCL 500.443; MSA 24.1443. The commissioner is empowered to use this information to recompute the premiums tax. *Id.* If the amount of tax paid by a foreign insurance company is less than the commissioner's computation, the commissioner may take action to recover the difference plus penalties. MCL 500.444; MSA 24.1444, MCL 500.445; MSA 24.1445. It appears, therefore, that if the commissioner is of the opinion that the formation of a domestic corpora-

tion has resulted in an illegal evasion of the premiums tax by a foreign insurance corporation, the commissioner should assess the premiums tax and proceed to collect the same. At such a point, the issues of illegal evasion of the premiums tax and the constitutionality of the same will be ripe for consideration.