*708 KELLY, J.
(dissenting). I would deny leave to appeal in this case. I believe that plaintiff has standing to pursue his action under the Paternity Act, MCL 722.711 et seq. The Court of Appeals did not err in finding that defendant’s default judgment of divorce contains a legally sufficient judicial determination that the child in question is not the issue of defendant’s marriage.
THE UNDERLYING PACTS
Plaintiff had a sexual relationship with defendant while she was separated from her husband. It appears that she was four months pregnant with plaintiffs child when her husband, who did not know she was pregnant, was granted a default judgment of divorce. In it, the court stated, “it further appearing that no children were born of this marriage and none are expected . . . .”
This statement from the judgment appears to be accurate. Plaintiff and defendant signed an affidavit of parentage agreeing that plaintiff was the child’s natural father. He was shown to be the father on the child’s birth certificate. Plaintiff, defendant, and the child lived together as a family for nearly 4V2 years before the parties separated. The child has always believed that plaintiff is his father.
Plaintiff filed this claim for recognition of his paternity so he could continue fathering the child. In response, defendant neither admitted nor denied that plaintiff is the boy’s father. Instead, she argued that plaintiff lacks standing to bring a paternity claim under applicable case law. Girard v Wagenmaker, 437 Mich 231; 470 NW2d 372 (1991); Aichele v Hodge, 259 Mich App 146; 673 NW2d 452 (2003); Kaiser v Schreiber, 469 Mich 944 (2003). The circuit court agreed with her. Plaintiff appealed.
*709 The Court of Appeals reversed the circuit court decision. It concluded that the language in the divorce judgment that there were no children “born of this marriage and none are expected” was a judicial determination that the defendant’s former husband is not the child’s legal father. The majority rejects this conclusion, observing that a child’s legitimacy should not be “decided by mere casual inference . . . .” Ante at 702.
THE MAJORITY’S ERROR
This is not a case of mere casual inferences. Defendant was personally served with the complaint for divorce that affirmatively alleged that she was not pregnant. She did not answer the complaint. Nor did she contest entry of the default judgment of divorce. Had she done so, her son’s paternity could have been, and presumably would have been, thoroughly litigated and scientifically determined. Her former husband’s testimony under oath that he and defendant had no children and expected none provided legally sufficient support for the court’s determination that “no children were born of this marriage and none are expected.” In its ruling today, this Court rewards defendant for her refusal to reveal the fact of her pregnancy and the identity of her child’s father while the divorce was pending.
Courts speak through their orders and judgments.[1] Default judgments are not lesser judgments by any *710 means. Like other judgments, a default judgment of divorce operates as a final statement of fact and law to the world.
In the matter that is before us, the paternity action, the majority appears to go behind the divorce judgment to nullify one of its findings. The finding is that defendant’s husband did not father any of defendant’s children. The majority does this despite the fact that the finality of the judgment is central to the orderly administration of justice. Plaintiff, like any other nonparty to a judgment, is entitled to rely on the judgment’s recitation of facts and on the finality of its rulings.
The judgment in this case says that no children were born of the marriage. It follows that defendant’s son is not an issue of defendant’s marriage. It happens that the judge did not know that defendant became pregnant during the marriage. However, the judge’s ruling that no children were born of the marriage is likely correct. There is no evidence, and no one is asserting, that defendant’s son is an issue of the marriage. There is strong evidence that plaintiff is his biological father. In short, there is nothing to support a finding that the divorce judge’s statement regarding the issue of the marriage was not accurate.
Under the circumstances of this case, the Court of Appeals panel was correct to reverse the judgment of the circuit court and remand the case for reinstatement of plaintiffs claim. Plaintiff properly relies on the default judgment of divorce to assert his standing to bring this paternity action. He should have the opportunity to assert his paternity. The availability of blood and DNA (deoxyribonucleic acid) testing makes a determination on the question relatively easy and accurate.
In this case, the majority again evidences a rigid adherence to wooden strictures such as the presump *711 tion of legitimacy even where, as here, the purposes of the presumption are not served. The majority has exhibited a consistent pattern of ruling against putative fathers who seek to exercise their due process rights with respect to children they claim as their own.[2] Once again, the majority relies on the presumption of legitimacy despite strong evidence that the fact presumed to be true is false. In finding that defendant’s former husband is the child’s legal father, the Court is throwing into question part of the findings of the divorce judgment even though (1) the presumption of legitimacy has never been tested, and (2) the findings in the judgment are prima facie evidence that the child in question is not an issue of the marriage.
A presumption is a procedural device. Widmayer v Leonard, 422 Mich 280, 286; 373 NW2d 538 (1985). It operates during a legal proceeding. A rebuttable presumption is subject to being overcome, in the case of the presumption of legitimacy, by clear and convincing evidence. Unless the divorce proceeding is reopened and the judgment amended under circumstances where both parties have notice and the opportunity to respond, the judgment’s current findings are the dominant legal facts. And plaintiff can properly rely on them to assert his standing to pursue his paternity action.
Surely, the presumption of legitimacy was not created to render children fatherless. Yet, that is precisely *712 what the majority’s application of it does in this case. As a practical matter, defendant’s former husband will almost certainly never provide financial support for defendant’s son. I am uncertain that the majority’s statement that he is the child’s legal father is correct. It is not clear what status the presumption of legitimacy has in light of the findings of the divorce judgment.
What is clear is that, as a practical matter, the child can expect to have no father in defendant’s former husband. In the unlikely event that defendant should ever try to assert that her former spouse is the child’s legal father, the consequences are predictable. If defendant sought to and succeeded in reopening the divorce proceedings to obtain support for the child from her former spouse, he would object. Presumably he would prove through a DNA or blood test that he is not the biological father. The test results would provide the clear and convincing evidence that would rebut the presumption of legitimacy.
For this reason, it is not to be anticipated that defendant will ever attempt to obtain a court order finding that her former spouse is the child’s father. And plaintiff cannot seek to reopen the divorce case. Killingbeck v Killingbeck, 269 Mich App 132; 711 NW2d 759 (2005).[3] In effect, the majority has blocked plaintiff from ever having the legal right to father and support the child. As our Court observed 29 years ago, without dissent:
*713 “If the function of a court is to find the truth of a matter so that justice might be done, then a rule which absolutely excludes the best possible evidence of a matter in issue rather than allow it to be weighed by the trier of fact must necessarily lead to injustice. Further, when a court voluntarily blindfolds itself to what every citizen can see, the public must justifiably question the administration of law to just that extent.” [Serafin v Serafin, 401 Mich 629, 635-636; 258 NW2d 461 (1977), quoting the Texas Court of Civil Appeals in Davis v Davis, 507 SW2d 841, 847 (Tex Civ App, 1974).]
CONCLUSION
I would deny leave to appeal and remand this case to the trial court for a full hearing of plaintiffs paternity claim. Plaintiff should be accorded standing there. I would hold that defendant’s judgment of divorce contains an effective finding by the divorce court that defendant’s son was not an issue of her marriage. The judgment’s failure to be more specific was caused solely by defendant’s deception in keeping secret the fact that she was pregnant. There is strong, unrefuted evidence that any presumption that plaintiffs son was the issue of defendant’s marriage would be rebutted if tested. Defendant has not chosen to test it; plaintiff cannot.
Defendant should not he heard now to rely on a presumption that she should have asserted in the divorce court. The majority apparently concludes that the presumption arose when her child was born and has force and effect outside and despite the language of the divorce judgment. Even if that were true, and I question it, defendant should not be permitted to rely on the presumption to defeat plaintiffs standing in his paternity action. If she wishes to assert it, defendant should seek to reopen the divorce case. For this Court to place the presumption of legitimacy over the judgment of *714 divorce is to allow defendant to defeat plaintiffs standing in the paternity action. This is despite the fact that the presumption that defendant relies on likely would have been rebutted already but for her deception of her husband and of the divorce court. The result is ill-reasoned and unjust.

 MCL 600.2106 provides, “A. . . judgment... of any court of record in this state .. . shall be prima facie evidence of.. . all facts recited therein . ...” The default judgment of divorce at issue here resolved the fact that Charles did not father any children with defendant. Until and unless it is reopened and amended, it is res judicata with respect to the findings therein.

 Recent cases in which the majority has denied standing or refused to consider granting standing to putative biological fathers for the avowed purpose of protecting the presumption are: McNamara v Farmer, 474 Mich 877 (2005); Numerick v Krull, 265 Mich App 232; 694 NW2d 552 (2005), lv den 474 Mich 877 (2005); In re KH, 469 Mich 621; 677 NW2d 800 (2004); Aichele v Hodge, 259 Mich App 146; 673 NW2d 452 (2003), lv den 469 Mich 994 (2004); Kaiser v Schreiber, 469 Mich 944 (2003); Pniewski v Morlock, unpublished opinion per curiam of the Court of Appeals, issued June 5, 2003, (Docket No. 238767), lv den 469 Mich 904 (2003); In re CAW, 469 Mich 192; 665 NW2d 475 (2003).

 In Killingbeck, a child’s biological father moved to intervene in the plaintiffs divorce case concerning custody issues. He was not the plaintiffs husband. The Court of Appeals noted that the trial court erred in granting his motion to intervene, saying, “Domestic relations actions are strictly statutory. The only parties to a divorce action are the two people seeking dissolution of their marriage.... [The biological father’s] sole recourse on any issue involving his son was in the paternity action, not in the divorce action.” Id. at 140 n 1.